**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **BUREAU OF CONSUMER FINANCIAL PROTECTION,** |  |
| Petitioner, | Case No. 7:19-cv-01732-NSR |
| **LAW OFFICES OF CRYSTAL MORONEY, P.C.** |  |
| Respondent. |  |

### LAW OFFICES OF CRYSTAL MORONEY, P.C.'S
### RESPONSE TO ORDER TO SHOW CAUSE

**JOHN H. BEDARD, JR, ESQUIRE**
Georgia Bar No.: 043473

**BEDARD LAW GROUP, P.C.**
4855 River Green Parkway, Suite 310
Duluth, GA 30096
Telephone: (678) 253-1871
E-Mail: jbedard@bedardlawgroup.com
*Admitted Pro Hac Vice*

**RONALD S. CANTER, ESQUIRE**
Maryland Bar No.: 7911010055

**THE LAW OFFICES OF RONALD S. CANTER, LLC**
200A Monroe Street, Suite 104
Rockville, MD  20850
Telephone:  301-424-7490
E-Mail:  rcanter@roncanterllc.com
*Pro Hac Vice Admission Pending*

*Counsel for Law Offices of Crystal Moroney, P.C.*

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................... 1

II.     THE CFPB'S STRUCTURE VIOLATES ARTICLE II OF THE CONSTITUTION
        WHICH VESTS EXCLUSIVE EXECUTIVE POWER IN THE PRESIDENT OF
        THE UNITED STATES ........................................................................ 2

        A. Introduction….. ......................................................................... 2

        B. The Dodd-Frank Act Confers Overly Broad Executive Authority on the
           Director of the Bureau ................................................................. 3

           1. The Dodd-Frank Act Impermissibly Shields the CFPB's Director
              from Presidential Oversight and Democratic Accountability .............. 3

           2. The CFPB Is Unlike Other Independent Agencies That Have Passed
              Constitutional Muster ......................................................... 4

        C. The CFPB's Director Is Not Accountable To Congress Through
           Appropriations ........................................................................... 6

        D. The Court Should Find The CFPB's Structure Unconstitutional And Strike
           Down The CFPB As A Whole ....................................................... 7

III.    EVEN IF THE BUREAU WAS CREATED BY LEGISLATION THAT DID NOT
        UNCONSTITUTIONALLY USURP THE EXECUTIVE POWER IN ARTICLE II,
        THIS COURT SHOULD NONETHELESS DENY THE BUREAU'S PETITION
        BECAUSE IT LACKS A REQUIRED NOTIFICATION OF PURPOSE ..................... 9

IV.     IN THE ALTERNATIVE, THIS COURT SHOULD STAY PROCEEDINGS
        UNTIL THE SECOND CIRCUIT DECIDES THE *RD LEGAL* APPEAL ................ 12

        A. Legal Standard ......................................................................... 12

        B. The Relevant Factors Specifically Weigh In Favor Of The Granting
           Of A Stay ................................................................................ 12

           1. The Private Interest Of The CFPB As Balanced Against Any
              Prejudice ...................................................................... 12

           2. The Private Interest Of And Burden On The Respondent ............................. 13

           3. The Interest Of The Courts .................................................... 14

           4. The Interest Of Persons Not Parties To The Civil Litigation ........................ 14

5.   The Public Interest ........................................................................................... 15

V.   CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666 (D.C. Cir. 2013)........................7

*Clinton v. Jones*, 520 U.S. 681 (1997) ......................................................................................3

*Consumer Financial Protection Bureau v. RD Legal Funding, LLC*,
332 F.Supp.3d 729 (S.D.N.Y. 2018)........................................................................................1, 9

*Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges and Schools*, 854 F.3d 683 (D.C.Cir. 2017) ..........................................................................10

*Consumer Financial Protection v. Source for Public Data, L.P.*,
903 F.3d 456 (5th Cir. 2018)......................................................................................................10

*Dep't of Transp. v. Ass'n of Am. R.R.*, __ US. __, 135 S. Ct. 1225 (2015) ................................7

*Desiano v. Warner-Lambert & Co.*, 467 F.3d 85 (2nd Cir. 2006) ................................................13

*Diversity Group, Inc. v. Daugerdas*, 217 F.R.D. 152 (S.D.N.Y. 2003) ................................13, 14

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) ....................................................8

*Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993) ..................9

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)....................3, 4, 8

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ....................................................4, 5

*Kappel v. Comfort*, 914 F.Supp. 1056 (S.D.N.Y. 1996) ..............................................................12

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405, 4 L.Ed. 579 (1819) ................................2

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................................................................................5, 6

*Motorola Credit Corp. v. Uzan,* 561 F.3d 123, 129 (2nd Cir. 2009) ..........................................11

*New York v. United States*, 505 U.S. 144 (1992) ........................................................................7

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) ....................................................7

*Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) ....................................................................................6

*United States v. Richardson*, 418 U.S. 166 (1974) ....................................................................7

*Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ............................13

**Statutes And Rules:**

12 U.S.C. § 5481(12) ........................................................................................ 6

12 U.S.C. § 5491(a) ...................................................................................... 2, 8

12 U.S.C. § 5491(c)(1) ..................................................................................... 4

12 U.S.C. § 5491(c)(2) .................................................................................. 4, 6

12 U.S.C. § 5491(c)(3) .................................................................................. 1, 3

12 U.S.C. § 5492(c)(4) ..................................................................................... 3

12 U.S.C. § 5497(a) ........................................................................................ 6

12 U.S.C. § 5497(a)(2)(C) ............................................................................... 6

12 U.S.C. § 5497(a)(4)(E) ............................................................................ 3, 4

12 U.S.C. § 5512(b)(4) .................................................................................... 3

12 U.S.C. § 5531 ............................................................................................. 9

12 U.S.C. § 5536 ............................................................................................. 9

12 U.S.C. § 5562 ............................................................................................. 8

12 U.S.C. § 5562(c) ......................................................................................... 9

12 U.S.C. § 5563 ............................................................................................. 8

12 U.S.C. § 5564 ............................................................................................. 8

12 U.S.C. § 5565(a)(2) ..................................................................................... 8

12 U.S.C. § 5581(b) ......................................................................................... 8

15 U.S.C. § 41 ................................................................................................. 5

15 U.S.C. § 1681 ............................................................................................. 9

15 U.S.C. § 1692 ............................................................................................. 9


12 C.F.R. § 1031 ............................................................................................. 9

12 C.F.R. § 1036 ............................................................................................. 9

12 C.F.R. § 1080.5 .......................................................................................... 9

Respondent, Law Offices of Crystal Moroney, P.C. ("LOCM", "Law Office" or "Law Firm") responds to this Court's Order to Show Cause (ECF No. 8) as follows:

## I.     INTRODUCTION

In June 2018, this Court dismissed an enforcement action filed by the Consumer Financial Protection Bureau ("CFPB" or "Bureau"),[1] holding that the Bureau is "unconstitutionally structured because it is an independent agency that exercises substantial executive power and is headed by a single Director."  *See*, *Consumer Financial Protection Bureau v. RD Legal Funding, LLC*, 332 F.Supp.3d 729, 784 (S.D.N.Y. 2018) (hereinafter referred to as "*RD Legal*").[2]  In doing so, this Court concluded that the proper remedy for the constitutional challenge "is to invalidate Title X in its entirety."[3]  *See*, Case No. 1:17-cv-00890-LAP at ECF No. 105, p. 6.

Rather than abide by this Court's mandate declaring it to be an unconstitutionally created agency without power to sue, the Bureau doubled down with a new enforcement action in the same court that previously dismissed it as a party Plaintiff. Moreover, the Bureau ventures into uncharted territory, seeking to compel an attorney licensed by the States of New York and New Jersey to produce attorney client communications, a demand contrary to the ethical mandates an attorney must follow in the practice of law.

For these reasons, the Law Offices of Crystal Moroney, P.C. asks this Court to follow the ruling in *RD Legal*, hold that the Bureau's structure is constitutionally infirm, invalidate Title X of the Dodd-Frank Act in its entirety, and dismiss the Bureau's petition.

---

[1] The Bureau appealed this Order.  *See*, Case No. 18-2743, Second Circuit Court of Appeals.  Oral argument is set for November 21, 2019.

[2] On September 18, 2019, the Bureau told the Supreme Court it agrees that the provision of 12 U.S.C. §5491(c)(3) prohibiting removal of its Director except "for cause" violates the separation of power doctrine of the United States Constitution.  *See*, Brief of Respondent on Petition for Writ of Certiorari, Case No. 19-7 (Exhibit 1).  The Bureau posits that the proper remedy is to sever this clause limiting the President's authority to remove the Director, a position at odds with the ruling of this Court in *RD Legal*.

[3] The Bureau was created by Title X of the Dodd-Frank Act.

II.  **THE CFPB'S STRUCTURE VIOLATES ARTICLE II OF THE CONSTITUTION WHICH VESTS EXCLUSIVE EXECUTIVE POWER IN THE PRESIDENT OF THE UNITED STATES**

A.  **Introduction**

This case concerns the extent and reach of executive power under Article II of the Constitution. Under this primary law, all federal government power derives from the people. U.S. Const. pmbl. *See, McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405, 4 L.Ed. 579 (1819). To prevent tyranny and protect individual liberty, the Framers of the Constitution separated the legislative, executive, and judicial powers of the new national government. The Framers insisted upon accountability for the exercise of executive power by conferring full responsibility for that power in a single person, the President of the United States, who is elected by and accountable to the people. The first 15 words of Article II speak with unmistakable clarity: "The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. Article II also assigns to the President alone the authority and responsibility to "take Care that the Laws be faithfully executed." *Id.* § 3.

The Bureau was created by Title X of Dodd-Frank as an "independent bureau" within the Federal Reserve System, 12 U.S.C. § 5491(a). Because the law establishing the CFPB insulates it from requisite checks and balances by the Executive and Legislative branches, the Bureau's structure cannot be reconciled with the Constitution's separation of powers principles. For this reason, and as explained in detail below, this Court should follow the ruling in *RD Legal* and dismiss the Bureau's petition to enforce its Civil Investigative Demand ("CID").

B.  **The Dodd-Frank Act Confers Overly Broad Executive Authority on the Director of the Bureau**

1.  **The Dodd-Frank Act Impermissibly Shields the CFPB's Director from Presidential Oversight and Democratic Accountability**

The Framers "consciously decid[ed] to vest Executive authority in one person rather than several. They did so in order to focus, rather than to spread, Executive responsibility thereby facilitating accountability." *Clinton v. Jones*, 520 U.S. 681, 712 (1997) (Breyer, J., concurring). "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010), *quoting* 1 Annals of Cong. 463 (1789). "Since 1789, the Constitution has been understood to empower the President to keep these officers accountable— by removing them from office, if necessary." *Id.* at 483.

Dodd-Frank violates these bedrock principles by vesting unfettered and immense power in one person—the Director of the CFPB—whom the President may remove only "for inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(3).  Congress also erected impermissible structural features in Dodd-Frank to insulate the Director from the President's control, including: (1) limiting the President's ability to control the CFPB's legislative recommendations, testimony or comments on legislation submitted to Congress (12 U.S.C. § 5492(c)(4)); (2) precluding the President from overruling the Director's interpretation of a consumer protection statute where that law is administered by both the Bureau and another agency (12 U.S.C. § 5512(b)(4)); and (3) precluding the Executive branch from exercising any oversight with respect to the Bureau's financial operating plans and forecasts. 12 U.S.C. § 5497(a)(4)(E). Moreover, the Director exercises all this power over a five-year term, one year more than the term of an elected President and the five year term can be extended indefinitely if the Senate does not confirm a successor. 12 U.S.C. §§ 5491(c)(1) and (c)(2).

In *Free Enterprise Fund, supra*, the Supreme Court reaffirmed the principle that Article II of the Constitution forbids Congress from limiting the President's discretionary authority to hold

executive officers accountable through removal from office. There, the Supreme Court addressed the structure of the Public Company Accounting Oversight Board ("PCAOB"), a five-member board with "expansive powers to govern [the] entire" securities industry, whose members could be removed only by the Securities and Exchange Commission—not the President—and only for cause. *Free Enterprise Fund,* at 484-86.  The Court observed that the PCAOB presented a "new situation," *id.,* at 483, and that "[p]erhaps the most telling indication of the severe constitutional problem with the PCAOB is the lack of historical precedent for this entity." *Id.* at 505 (internal quotation omitted). The Court held that this "novel" structure "subverts the President's ability to ensure that the laws are faithfully executed" and therefore is "incompatible with the Constitution's separation of powers." *Id.* at 496 and 498.

The CFPB presents an analogous "novel" structure that lacks historical precedent and that improperly limits the President's discretionary authority to remove subordinate officers.  Because the President cannot "take Care that" the consumer protection laws "be faithfully executed if he cannot oversee the faithfulness of the officers who execute them," *id.,* at 484 (internal quotation mark omitted), the CFPB's structure is constitutionally flawed.

### 2. The CFPB Is Unlike Other Independent Agencies That Have Passed Constitutional Muster

The Supreme Court has recognized only two limited exceptions to the general prohibition against restricting a President's removal power: (1) a multi-member "body of experts," *Humphrey's Executor v. United States*, 295 U.S. 602, 624-26 (1935), and (2) certain inferior officers with "limited jurisdiction and tenure," *Morrison v. Olson*, 487 U.S. 654, 691 (1988). Neither exception applies to the CFPB.

**Exception One Does Not Apply.** In *Humphrey's Executor*, *supra,* the Court addressed the "good cause" removal provision that applies to the members of the Federal Trade Commission,

4

who hold seven-year terms and who cannot be removed by the President except for "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 620, *citing* 15 U.S.C. § 41. The Court upheld this removal provision on the grounds that the FTC is a "non[-]partisan," multimember group acting in a "quasi[-]judicial and quasi[-]legislative" rather than "purely executive" capacity. *Id*. at 624, 627-29. The Court's conclusion rested not only on the FTC's functions, but also on its features as an "administrative body" comprised of multiple members "called upon to exercise the trained judgment of a body of experts." *Id.* at 624 and 628.

In contrast, the CFPB is headed not by a non-executive and non-partisan "body of experts" but by a single, autonomous Director empowered to enforce nineteen consumer protection laws. Unlike the FTC, the Director is not accountable to a multimember commission, which creates an institutional barrier to unilateral action. *See, Recent Legislation, Dodd-Frank Act Creates the Consumer Financial Protection Bureau*, 124 Harv. L. Rev. 2123, 2128 (2011) ("presence of dissenters" in agency proceedings "provides new information and forces the proponent to articulate a coherent rationale, thus acting as a constraining force"). For this reason, *Humphrey's Executor* is distinguishable and does not provide a basis to uphold the provisions of the Dodd Frank Act that created the Bureau.

**Exception Two Does Not Apply.** In *Morrison*, *supra,* the Court upheld a statute that permitted an independent counsel to be removed by the Attorney General only for "good cause" because the appointed counsel had "limited jurisdiction and tenure" and "lack[ed] policymaking or significant administrative authority." 487 U.S. at 691. In contrast to this limited role, the Director wields wide-ranging and unchecked executive power to enforce nineteen consumer protection laws (12 U.S.C. § 5481(12)); serves a lengthy five-year term (12 U.S.C. § 5491(c)(1)); and, as this case illustrates, has significant policymaking authority, including the decision to seek

through subpoena power information subject to the "attorney–client privilege…the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981).

The circumstances present in *Morrison* that justify limited restrictions on the President's removal power are not present here and this second exception does not save the structure of the CFPB from constitutional infirmity.

### C.     The CFPB's Director Is Not Accountable To Congress Through Appropriations

The CFPB also exercises its regulatory and enforcement powers absent meaningful oversight or control from Congress. Dodd-Frank authorizes the Director to unilaterally requisition up to 12% of the Federal Reserve System's operating expenses—totaling almost half a billion dollars[4]—**without congressional approval**. 12 U.S.C. § 5497(a). Congress is also prohibited from reviewing the CFPB's use of these funds. 12 U.S.C. § 5497(a)(2)(C).

Dodd-Frank removed another critical democratic check on potential abuses of power by eliminating congressional appropriations oversight of the CFPB's financial resources. *See,* U.S. Const., art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.").  In the case of the CFPB, the "power of the purse"—Congress's "ultimate weapon of enforcement is unavailable." *United States v. Richardson*, 418 U.S. 166, 178 n.11 (1974).  This power serves the "fundamental and comprehensive purpose" of "assur[ing] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 427-28 (1990).

---

[4] The CFPB's funding was set at $468.2 million for 2019. *See*, consumerfinance.gov/about-us/budget-strategy/funds-transfer-requests/ (last accessed September 16, 2019).

6

Congress may not abdicate its most important constitutional check against executive power. *See, New York v. United States*, 505 U.S. 144, 182 (1992) (stating that the separation of powers does not depend on "whether or not the encroached-upon branch approves the encroachment"). By insulating the CFPB from congressional appropriations oversight, Congress has impermissibly restrained its ability to hold the Executive branch accountable. This abdication provides an additional reason why the CFPB's structure violates the Constitution's separation of powers principle.

### D.     This Court Should Find the CFPB's Structure Unconstitutional and Strike Down the CFPB as a Whole

The constitutionality of the CFPB's structure must be examined as a whole, without viewing each particular feature in isolation. "[J]ust because two [or more] structural features raise no constitutional concerns independently does not mean Congress may combine them in a single statute." *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013), *vacated on other grounds by Dep't of Transp. v. Ass'n of Am. R.R.*, __ US. __, 135 S. Ct. 1225 (2015). Although the Supreme Court has "previously upheld limited restrictions" on particular checks and balances, the combined elements of the CFPB's "novel structure"—a single Director who may only be removed for cause, who serves a lengthy five-year term, and who establishes his or her own annual budget of almost half a billion dollars without congressional oversight—"does not merely add to the [CFPB's] independence, but transforms it." *Free Enter. Fund*, 561 U.S. at 495-496.

The Director exercises "[a]ll consumer financial protection functions" previously exercised by seven agencies (12 U.S.C. § 5581(b)), which includes the power to: enforce federal consumer protection laws, pursue actions in federal court, pursue administrative actions (12 U.S.C. §§ 5562-5564), and to seek a wide range of legal and equitable relief. 12 U.S.C. § 5565(a)(2). The public

must be able to "ensure that those who wield[]" power are "accountable to political force and the will of the people." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991). The CFPB's unprecedented insulation from presidential *and* congressional oversight goes too far in undermining constitutionally required democratic accountability.

Here, Congress intended to create an agency that was "completely independent, with an independently appointed director, an independent budget, and an autonomous rulemaking authority." 156 Cong. Rec. H5239 (2010) (Rep. Maloney).  The purpose of Title X was to "create a consumer bureau . . . that is independent," 156 Cong. Rec. S5871 (2010) (Sen. Cardin), in order to "improv[e] regulatory independence," S. Rep. No. 111-176, at 24 (2010). The statutory text further reflects Congress's intention of creating "an independent bureau." 12 U.S.C. § 5491(a). This independence is contrary to the Executive Power of the President as provided for in Article II of the Constitution.  Congress cannot achieve indirectly through a federal agency what it cannot itself achieve directly – the dilution of executive Power through legislation which impedes the President's exclusive constitutional authority to "take Care that the Law be faithfully executed."

For this reason, the CFPB "lacks authority to bring this enforcement action because its composition violates the Constitution's separation of powers." *Fed. Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993).  Therefore, the CFPB's petition should be dismissed.  *See, RD Legal,* at 785.  ("Plaintiff Consumer Financial Protection Bureau is unconstitutionally structured and lacks authority to bring claims.")

## III.    EVEN IF THE BUREAU WAS CREATED BY LEGISLATION THAT DID NOT UNCONSTITUTIONALLY USURP THE EXECUTIVE POWER IN ARTICLE II, THIS COURT SHOULD NONETHELESS DENY THE BUREAU'S PETITION BECAUSE IT LACKS A REQUIRED NOTIFICATION OF PURPOSE

The Bureau's Civil Investigative Demand ("CID") (Exhibit A to Petition) includes a generic notification of purpose purportedly in compliance with 12 C.F.R. § 1080.5 as follows:

> The purpose of this investigation to determine whether debt collectors, furnishers, or other persons in connection with collection of debt and furnishing of information have engaged or are engaging in unfair, deceptive, or abuse acts or practices in violations of § 1031 and 1036 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536; or have violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. or the Fair Credit Reporting Act, 15 U.S.C. § 1681, et. seq. and its implemental regulation.  The purpose of this investigation is also to determine whether Bureau action to obtain legal or appropriate relief will be in the public interest.

The Bureau conducted its required "meet and confer" with the Respondent on July 5, 2017 in Washington, D.C., attended in person by Crystal Moroney, Esquire.  At this meeting, Ms. Moroney objected to the lack of any detail in the notification of purpose and directly asked the Bureau to articulate what conduct was alleged to violate the law. The Bureau refused to respond.  *See*, Affidavit of Crystal Moroney. The Bureau's generic statement of purpose, its failure to provide any explanation as to reasons for its investigation and to provide any explanation as to the alleged offensive conduct is contrary to the provisions of 12 U.S.C. § 5562(c) which requires that the Bureau in "each Civil Investigative Demand . . . state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." (Emphasis added). The Bureau's failure to identify *conduct* in its notification of purpose coupled with the substantive breadth of the CID does not fairly inform the Respondent of the nature of the conduct constituting an alleged violation of law and does not disclose the particular provision of law applicable to the Bureau's investigation. *See*, *Consumer Financial Protection v. Source for Public Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018) and *Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges and Schools*, 854 F.3d 683, 689 (D.C.Cir. 2017) (internal citations omitted) (denying enforcement of Civil Investigative Demand "where there is 'too much indefiniteness or breadth in the items requested'").

The notification of purpose in the CID here suffers from the same defects as in *Accrediting Council* where the District of Columbia Circuit Court of Appeals determined that a CID that only provides a notice of perceived "unlawful acts and practices" but offers no explanation as to the nature of any conduct constituting an alleged violation nor provides any reference to a specific legal provision applicable to the purported violation does not comply with Federal law. *Id.* at 691. That Court explained that where "the notification of purpose gives no descriptions whatsoever of the conduct the CFPB is interested in investigating, we need not and properly cannot accurately determine whether the inquiry is within the authority of the Agency and whether the information sought is reasonably relevant." *Id*.

In April, 2019 and in recognition of these two appellate rulings invalidating generic notifications of purpose, the Bureau announced a policy change to "provide more information about the potentially applicable provisions of law that may have been violated," a modification that the Bureau acknowledged "takes into account recent court decisions about notifications of purpose." *See*, Exhibit 2. Despite its own policy change, the Bureau presses forward, in a remarkable display of chutzpah,[5] by refusing to amend the notification of purpose contained in the CID it now seeks to enforce even after its announced change of policy. Because the notification of purpose in this matter suffers from the legal defects as in the two appellate rulings the Bureau followed when it made its change of policy, this Court should deny the Bureau's Petition to enforce its unlawful CID.[6]

---

[5] "'Chutzpah' as a legal term of art is analytically similar to "unclean hands," though not necessarily coterminous with that concept as understood in Chancery. …Courts in this Circuit have employed…contemporary variations where a party's conduct is especially and brazenly faulty". *Motorola Credit Corp. v. Uzan,* 561 F.3d 123, 129 (2nd Cir. 2009).

[6] The Bureau's petition and attachments include only the first two of a number of communications between the parties that demonstrate the Law Firm's timely assertion that the Rules of Professional Conduct York require that it withhold production of information relating to the Law Firm's representation of its client and confidential client communications. These communications include (1) the Law Firm's written responses of July 21, 2017; (2) the Law Firm's supplemental document production.;(3) the Bureau's September 15, 2017 letter (Exhibit 3) that demanded a

There remains one additional and compelling reason why this Court should refuse to enforce a CID that does not contain a lawful Notification of Purpose. In this case, the Bureau requests information concerning the Law Firm's collection activities, all of which are undertaken by an attorney acting on behalf of a client.  The Bureau's overbroad, unfettered and wholesale request for information relating to the Law Firm's representation of its clients is patently improper.  If the Bureau seeks information as to the credit granting practices of the Law Firm's clients, the Bureau can generate a tailored request to one or more clients seeking specific information.  However, the Bureau should not be permitted to serve a CID on a law firm and reach the universe of information that the law firm possesses relating to the representation of its clients that include an expansive number of documents that the Law Firm is duty bound to keep confidential. The reasons the Law Firm withheld this information are explained in detail in the Law Firm Supplemental Response to the Bureau's CID.[7]

For this additional reason, this Court should refuse to enforce a CID that includes an unlawful Notification of Purpose seeking a wholesale production of the confidential information relating to an attorney's representation of its clients.

## IV.    IN THE ALTERNATIVE, THIS COURT SHOULD STAY THIS CASE UNTIL THE SECOND CIRCUIT DECIDES THE *RD LEGAL* APPEAL

Alternatively, there are compelling reasons for this Court to stay the CFPB's petition to enforce its Civil Investigative Demand until the Second Circuit rules on the appeal of this Court's decision declaring the Bureau to be constitutionally infirm and invalidating the statute

---

response by the <u>following business day</u> – September 18, 2017; and (4) the Law Firm's response to this unreasonable demand for production (Exhibit 4).  In an effort to resolve the Bureau's demand, the Defendant wrote to its clients on October 11, 2017 requesting consent to disclose information shielded by Rule 1.6.  As explained in the Affidavit of Crystal Moroney, Esquire, no client consented.

[7] The Law Firm has not attached this response as an exhibit because it contains extensive references to non-public information as to the Law Firm's practices and procedures and also includes financial disclosures as to the Law Firm's income, assets and employee salaries.

under which the Bureau asserts authority to bring this petition.  The continuation of this action while a dispositive appeal is pending would result in undue and irreparable prejudice to the Respondent and its clients in the event the appeal affirms this Court's conclusion that the Bureau is unconstitutionally structured.

### A.      Legal Standard

This Court considers the following factors when ruling on a motion to stay:  "(1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interest of the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest."  *Kappel v. Comfort*, 914 F.Supp. 1056, 1058 (S.D.N.Y. 1996), *citing Volmar Distributors v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

### B.      The Relevant Factors Weigh In Favor Of The Granting Of A Stay

#### 1.      The Private Interest Of The CFPB As Balanced Against Any Prejudice

If the Second Circuit affirms this Court's ruling in *RD Legal* and invalidates the enabling statute authorizing the Bureau to issue the CID, no prejudice would be suffered by the Bureau, which would no longer be in existence.  The Bureau also cannot complain about any time delay resulting from a stay to permit the Second Circuit to decide a case being argued in the same month that this Court holds its Show Cause Hearing.  The Bureau already waited over one and one half years after last communicating with the Respondent before bringing its petition to enforce the CID.   In  the  interim,  this  Court  held  that  the  Bureau  was

unconstitutionally established and invalidated the statute under which it presumes authority to issue its CID.[8]

Weighing the interest of the Bureau against any potential prejudice by delay, this factor weighs heavily in favor of the Respondent's request to stay this action until the Second Circuit decides *RD Legal*.

## 2.    The Private Interest Of And the Burden On The Respondent

The private interest of the Respondent Law Firm indisputably is to avoid having to respond to a Federal government investigatory subpoena that demands the law firm produce information relating to the representation of the client, including confidential client communications - an interest of the highest order.   *See, e.g., Diversify Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 160 (S.D.N.Y. 2003) ("it is undeniable that the public has a significant interest in preserving the confidentiality of attorney-client communications," ordering appointment of Special Master to examine documents filed in support of summary judgment to determine which documents contained privilege communications in order to redact privileged documents).

The burden on the Law Firm is irrefutably substantial and incurable. In the event this Court orders production of confidential communications to the Bureau, and then the Second Circuit later holds that the Bureau has no authority to act, the Respondent would have disclosed privileged communications and cannot cure the damage to its clients and to the Law Firm's representation of its clients.

## 3.    The Interest Of The Courts

---

[8] The time between the Bureau's last communication with Respondent and its filing of the instant petition is greater than the average time the Second Circuit takes to decide an appeal As of March, 2019, the median time for the Second Circuit to rule from filing a notice of appeal to ruling is 11.3 months. *See*, uscourts.gov/sites/default/files/data-tables/fcms-na-appsumary/0331.2019.pdf (last accessed September 18, 2019).

The Second Circuit has recognized the interest in maintaining reasonable uniformity in Federal decisions. *See, e.g., Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2nd Cir. 2006) (explaining that Circuit Court gives respectful consideration to decisions of other Court of Appeals in an effort to maintain reasonable uniformity). This interest in uniformity weighs substantially in favor of a stay so that this Court's ruling in this case will be consistent with any appellate decision in *RD Legal*.

### 4.      The Interest Of Persons Not Parties To The Civil Litigation

This factor favors Respondent because other persons, not parties to the civil litigation (*i.e.*, the Respondent's clients), have a vested interest in seeing that information relating to the Law Firm's representation of its clients and as to confidential communications are properly preserved. Here, a ruling requiring Respondent to comply with the CID while the *RD Legal* Funding appeal is pending would have a significant adverse impact on the Respondent, a result contrary to the interest of every one of the Law Firm's clients.

### 5.        The Public Interest

For the same reasons set out in Part IV.4., the public interest favors a stay which will operate to preserve the sanctity  of  information relating to an attorney's representation of his/her clients until an appellate court decides whether the Bureau has the power to compel an attorney to infringe on the Law Firm's professional duty in connection with an ongoing civil investigation.

For these reason, this Court should exercise its inherent authority and stay the Bureau's petition to enforce the Civil Investigative Demand until a ruling by the Second Circuit in the *RD Legal* case.

## V.        CONCLUSION

Respondent, the Law Offices of Crystal Moroney, P.C., respectfully requests that this Honorable Court dismiss the petition for enforcement of the Civil Investigative Demand on the basis that the CFPB is unconstitutionally structured and determine that the proper remedy is to invalidate Title X of the Dodd-Frank Act.  That determination would deprive the Petitioner of any right to seek investigatory materials.

In the alternative, the Respondent asks that this Honorable Court dismiss the petition to enforce because it fails to meet the statutory notification of purpose required by Federal law and/or to stay this case pending the Second Circuit's ruling in *RD Legal*.

Respectfully submitted this 3rd day of October, 2019.

**BEDARD LAW GROUP, P.C.**

/s/ *John H. Bedard, Jr.*
John H. Bedard, Jr.
Georgia Bar No: 043473
4855 River Green Parkway, Suite 310
Duluth, GA 30096
Telephone: (678) 253-1871
jbedard@bedardlawgroup.com

*Admitted Pro Hac Vice*

**THE LAW OFFICES OF RONALD S.
CANTER, LLC**

/s/ *Ronald S. Canter*
Ronald S. Canter
Maryland Bar No: 7911010055

200A Monroe Street, Suite 104
Rockville, MD 20850
Telephone: 301-424-7490
E-Mail: rcanter@roncanterllc.com

*Pro Hac Vice Admission Pending*

*Counsel for Law Offices of Crystal Moroney, P.C.*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by Electronic Notification pursuant to ECF procedures on this 3rd day of October, 2019 to:

Jehan A. Patterson, Esquire
Consumer Financial Protection Bureau
*Counsel for Bureau of Consumer Financial Protection*
Email: jehan.patterson@cfpb.gov
Email: chelsea.peter@cfpb.gov

Email: CFPB_CourtDocs@cfpb.gov


Elisabeth Vanessa Assae-Bille, Esquire
Consumer Financial Protection Bureau
*Counsel for Bureau of Consumer Financial Protection*
Email: elisabeth.assae-bille@cfpb.gov


/s/ *John H. Bedard, Jr.*

John H. Bedard, Jr.
*Counsel for Law Offices of Crystal Moroney, P.C.*